UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Petitioner, <br><br> v. <br><br> ARIA O. SABIT, <br><br> Respondent. | MISC NO. _____ |

**APPLICATION FOR ORDER TO SHOW CAUSE
AND FOR SUMMARY ENFORCEMENT OF
<u>CIVIL INVESTIGATIVE DEMAND 13-338</u>**

This is an action for summary enforcement of a Civil Investigative Demand ("CID") 13-338 issued by the United States Department of Justice in connection with an investigation into, *inter alia*, kickbacks to physicians.

This Application is supported by the attached Memorandum and by the Declaration of Special Agent Keith Kuntz, the latter of which is identified as Exhibit 1.

The United States respectfully requests an Order enforcing the CID. A proposed Order is attached.

                Respectfully submitted,

                STUART F. DELERY
                Assistant Attorney General

                BARBARA L. McQUADE,
                United States Attorney

                s/ Peter Caplan
                PETER A. CAPLAN (P30643)
                Assistant United States Attorney
                211 W. Fort Street
                Detroit, MI 48226
                Tel: (313) 226-9784
                Email: peter.caplan@usdoj.gov

                s/with consent of David M. Finkelstein
                MICHAEL D. GRANSTON
                TRACY L. HILMER
                ARTHUR S. DI DIO
                DAVID M. FINKELSTEIN
                Attorneys, Department of Justice
                Civil Division
                Post Office Box 261
                Ben Franklin Station
                Washington, D.C. 20044
                Tel: (202) 616-2971
                Email:David.M.Finkelstein@usdoj.gov

DATED: February 7, 2014

# MEMORANDUM IN SUPPORT OF THE UNITED STATES' PETITION FOR ORDER TO SHOW CAUSE AND FOR SUMMARY ENFORCEMENT OF CIVIL INVESTIGATIVE DEMAND 13-338

This is a summary proceeding filed by the United States as petitioner to obtain judicial enforcement of a Civil Investigative Demand (CID) issued by the United States Department of Justice to Dr. Aria O. Sabit pursuant to the False Claims Act, 31 U.S.C. § 3731(a)(1).

CID 13-338, which was personally served on Dr. Sabit on August 16, 2013, seeks information relevant to the Government's investigation into whether "Reliance Medical Systems, LLC, and its investors violated federal law by offering and/or paying kickbacks to physicians in order to induce them to use Reliance-branded medical devices, and that Reliance physician-investors performed medically unnecessary spinal fusion procedures." *See* Kuntz Decl., Ex. A (CID 13-338).

Dr. Sabit has invoked the Fifth Amendment and refused to produce any documents responsive to CID 13-338, with the exception of his *curriculum vitae* (CV). Neither the documents responsive to CID 13-338 themselves, nor the act of producing these documents are "testimonial" in nature. Thus, Dr. Sabit's reliance on the Fifth Amendment to shield himself

from the Government's civil document requests is without basis, and these demands should be summarily enforced.[1]

## BACKGROUND

A physician-owned distributorship (POD) is a company that derives revenue from selling implantable medical devices to hospitals for use on their physician investors' patients. Until late 2012, Reliance Medical Systems (Reliance) operated several PODs. From May 2010 until December 2010, Reliance conducted business in Ventura, California through one such POD, a company called Apex Medical Technologies, LLC (Apex). Aria Sabit was one of Apex's two founding physician investors. In May 2010, Dr. Sabit made a $5,000 initial "investment" and started using Reliance implants on his patients. *See* Kuntz Decl., ¶10.

On average, Reliance paid Dr. Sabit over $30,000 each month he practiced in California. *Id.* The rates at which Dr. Sabit performed surgeries that involve implanted spinal devices, such as cages and screws, increased dramatically during this period. For instance, Dr. Sabit's use of PEEK cages

---

[1] The Government does not contest Dr. Sabit's invocation of the Fifth Amendment as a basis for refusing to give testimony or answer interrogatories. This action concerns only his refusal to produce documents.

on Medicare patients increased over 400% during the period he was an Apex "investor."[2] *Id.* at Ex. D (Sabit Medicare Claims Data Summary).

In the Fall of 2010, hospital staff became alarmed that Dr. Sabit's infection and return-to-surgery rates were substantially higher than those of the other members of the surgical staff. In December 2010, the hospital suspended Dr. Sabit, and hired an outside expert to conduct an independent review of some of Dr. Sabit's surgeries. Days after the conclusion of this review, Sabit resigned. The hospital subsequently referred its concerns to the California Board of Medicine, which, in September 2013, filed a public accusation seeking the revocation of Sabit's medical license based on gross negligence and dishonest and corrupt acts. Kuntz Decl. at Ex. E (California Bd. of Med. Public Accusation). The proceeding to revoke Dr. Sabit's medical license is ongoing.

After he "resigned" from the hospital in California where he had been practicing, Sabit relocated to Michigan, where he currently resides and where he resumed his surgical practice. Although Sabit has repeatedly denied under oath having a financial relationship with Reliance or Apex, in fact Sabit remained an Apex "investor" until July 2012. Reliance paid Sabit

---

[2] Polyetheretherketone (or PEEK) cages are small plastic cylindrical devices that are placed in the disc space. Cages are often used in connection with other spinal implants to promote the fusion of spinal vertebrae.

5

over $400,000 during the two years he was an "investor." *See* Kuntz Decl., ¶10.

**Statutory Framework: the Anti-Kickback Statute and the False Claims Act**

The Anti-Kickback Statute (AKS) prohibits both the payment and receipt of any remuneration to induce a person to order goods for which payment may be made under a federal health program, including Medicare and Medicaid. *See* 42 U.S.C. § 1320a-7b(b).[3] On March 26, 2013, the Department of Health and Human Services Office of the Inspector General (OIG) issued a Special Fraud Alert in which it expressed its conclusion that physician-owned distributorships such as Reliance, "are inherently suspect under the anti- kickback statute." Kuntz Decl., Ex. M (Special Fraud Alert).

---

[3] Specifically, the AKS provides that "(1) Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind — (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony …
  (2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person — (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony … [unless one of ten enumerated exceptions apply]"  42 U.S.C. § 1320a-7b(b).

6

The False Claims Act (FCA) imposes civil liability when a person commits any of seven specified deceptive practices involving government funds or property. *See* 31 U.S.C. § 3729(a)(1)(A)-(G). In particular, Section 3729(a)(1)(A) imposes civil liability for "knowingly presenting or causing to be presented a false or fraudulent claim for payment." A claim for payment that is tainted by a violation of the AKS "constitutes a false or fraudulent claim for purposes of" the False Claims Act. 42 U.S.C. § 1320a–7b(g); *United States ex rel. Lisitza v. Johnson & Johnson*, 765 F. Supp. 2d 112, 127 & n.25 (D. Mass. 2011) (citing cases, and noting that, even prior to the most recent amendment of the AKS, "the majority of trial courts … have also held that violations of the AKS cause any resulting claim to be false.").

Section 3733 of the FCA empowers the Attorney General or his designee to issue a CID to "any person" who has information "relevant to a false claims law investigation." 31 U.S.C. § 3733(a)(1). "Congress intended the false claims CID to provide the Department of Justice with a means to assess quickly, and at the least cost to the taxpayers or to the party from whom information is requested, whether grounds exist for initiating a false claim suit under 31 U.S.C. §§ 3729-32 …" *United States v. Markwood*, 48 F.3d 969, 979 (6th Cir. 1995). The Attorney General may file a petition for

7

an enforcement of a CID in any judicial district in which the CID recipient resides. 31 U.S.C. § 3733(j)(1).

**CID 13-338, and the Government's Efforts to Confer with Dr. Sabit**

CID 13-338 seeks documents, testimony, and interrogatory responses from Dr. Sabit concerning his relationship with Reliance. Specifically, the CID seeks documents reflecting communications between Dr. Sabit and Reliance. CID 13-338, Attach. C, #3. The CID also requires copies of medical records for the patients on whom Dr. Sabit used Reliance implants, and documents in Dr. Sabit's possession concerning the Medical Board of California's investigation. *Id.*

CID 13-338 was personally served on Dr. Sabit on August 16, 2013. Kuntz Decl., Ex. F (Certificate of Service). On September 9, 2013, Dr. Sabit's counsel, Jonathan Frank, wrote an email to the undersigned stating that that "Dr. Sabit does intend to comply with the subpoena." *Id.*, Ex. G (Frank email). Mr. Frank further stated that, "we would like to set the response date at October 18 if possible." *Id.* At no time following that email did the undersigned relieve Dr. Sabit of any of his obligations under the CID, except to agree to Mr. Frank's proposed October 18 date of production.

In an in-person meeting with Mr. Frank on November 4, 2013, and again in writing on November 5, the undersigned repeated the Government's position that "[w]e expect Dr. Sabit to fully comply with the CID …. We need to know now where you object, the basis for your objection(s), and – where you do not object – when you expect to produce." *Id.* at Ex. H (Finkelstein Email). On Monday November 18 – one month after the agreed-upon production date – Mr. Frank responded, objecting to the production of any documents responsive to the CID with the exception of Dr. Sabit's CV. Kuntz Decl., Ex. I (Sabit Response to CID 13-338). Mr. Frank set forth the basis for Dr. Sabit's objection as follows:

> you have indicated that the Department of Justice is investigating potential civil and criminal violations of the False Claims Act by Reliance and/or Dr. Sabit … Given this, Dr. Sabit invokes his right under the Fifth Amendment not to produce documents or to provide testimony in response to this document request on the grounds that, rightly or wrongly, Dr. Sabit's act of producing such documents … in these subject areas may be used by the DOJ, correctly or incorrectly, in an effort to incriminate him.[4]

---

[4] Mr. Frank's assertion that the DOJ "indicated that the Department of Justice is investigating potential civil and criminal violations of the False Claims Act by Reliance and/or Dr. Sabit" is incorrect. The undersigned confirmed the civil investigation, but informed Mr. Frank that he was not authorized to speak about the status of any criminal investigation. The undersigned provided the names and phone numbers of attorneys within the Criminal Division to whom Mr. Frank could address questions concerning any criminal investigation.

9

*Id.* Mr. Frank did not explain how the act of producing responsive documents could be deemed "testimonial" in nature.[5]

## DISCUSSION

A CID may be issued to "any person" who has information "relevant to a false claims law investigation." 31 U.S.C. § 3733(a)(1). That person may be required to give oral testimony, answer written interrogatories, produce documents, or all of the above. *Id.* CIDs are a type of administrative subpoena. *United States v. Markwood*, 48 F.3d 969, 976 (6th Cir. 1995); *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1087 (D.C. Cir. 1992), and may be enforced in any judicial district in which the CID recipient resides. 31 U.S.C. § 3733(j)(1).

The role of the district court in evaluating a petition for enforcement of an administrative subpoena "is a strictly limited one." *FTC v. Texaco*, 555 F.2d 862, 873 (D.C. Cir. 1976) (*en banc*). The sole issue in an enforcement proceeding is whether "the court's process would or would not be abused by enforcement." *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118, 125 (3d Cir. 1981). No abuse is present where the enforcing court determines that "the inquiry is within the authority of the agency, the

---

[5] In a final effort to avoid unnecessary litigation, the undersigned contacted Mr. Frank on February 3, 2014, to inform him that the Government would commence a proceeding to enforce the CID unless Dr. Sabit withdrew his objections to the Government's document requests. Although Mr. Frank agreed to respond by February 4, he failed to meet this deadline.

demand is not too indefinite and the information sought is reasonably relevant" to the agency's inquiry. *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *United States v. Aero Mayflower Transit Co.*, 831 F.2d 1142 (D.C. Cir. 1987); *United States v. Westinghouse Electric Corp.*, 788 F.2d 164, 166 (3d Cir. 1986).

In order to set forth a *prima facie* case for enforcement of an administrative subpoena, it is sufficient for the issuing authority to submit an affidavit to the enforcing court that demonstrates the basis for its conclusion that the investigation is within the scope of the agency's authority and that the requested documents are relevant to the inquiry. *In re EEOC*, 709 F.2d 392, 400 (5th Cir. 1983); *United States v. Blue Cross & Blue Shield of Michigan*, 726 F. Supp. 1523, at 1524-25 (E.D. Mich. 1989). The attached sworn declaration of OIG Special Agent Keith Kuntz satisfies this requirement.

### 1. The Documents the Government Seeks Are Within the Scope of Its Authority to Investigate Violations of the False Claims Act.

The Government's investigation of Dr. Sabit and Reliance is well within the scope of its authority to investigate violations of the FCA, and the information the Government seeks is relevant to its investigation. The Government is investigating whether Reliance's financial relationship with

11

Dr. Sabit violated the AKS, and whether Reliance and Dr. Sabit caused hospitals to submit tainted claims for reimbursement for spinal fusion surgeries in violation of the FCA. The evidence shows that Apex paid Dr. Sabit more than four hundred thousand dollars between May 2010 and June 2012, during which time Dr. Sabit performed surgeries using Reliance implants that were billed to and paid for by federal health care programs. Further, there is evidence that Dr. Sabit's surgeries using Reliance implants have resulted in significant complications and at least one death. The Government may "investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not." *Morton Salt*, 338 U.S. at 642-43. Here, the Government's suspicion that Reliance's payments to Sabit were kickbacks, and that those kickbacks caused hospitals to submit false claims to federal health care programs, authorizes it to issue CIDs.

Further, the evidence shows that both Dr. Sabit and Reliance have attempted to obscure the true nature of their relationship. In particular, Sabit, while testifying under oath, has repeatedly mischaracterized the nature of his relationship with Reliance. During a series of depositions, Dr. Sabit repeatedly denied having had a financial relationship with Apex or Reliance. For instance, Sabit denied "ever [having] been compensated by a medical instrument manufacturer for use of their devices," denied "personally

12

mak[ing] any money depending on what instrumentation was being used," and denied "know[ing] anybody running a device company out of Bountiful, Utah," where Reliance is based. *See* Kuntz Decl., Ex. J (Sabit Deposition Testimony).[6]

Reliance principals have also mischaracterized their company's relationship with Dr. Sabit. For instance, on March 7, 2013, Brett Berry testified that "Dr. Sabit was only with us for a year or so," and that Reliance continued its relationship with Dr. Sabit "[m]aybe a handful of months" following his move to Michigan. Berry also testified that Reliance "pulled our product" from Dr. Sabit's hospitals shortly after he moved his practice to Michigan. *See* Kuntz Decl., Ex. K (Berry Deposition Testimony). None of these claims is true. In fact, Reliance continued its financial relationship with Dr. Sabit until late 2012 – more than a year and a half after he "resigned" from the hospital in California where he had been practicing – and Reliance continued to supply implants to hospitals in Michigan where Dr. Sabit performed surgery until as recently as April 2013. In view of

---

[6] After years of denying any financial relationship with Reliance, in a deposition on September 9, 2013 Sabit admitted to "own[ing] stocks in various companies," including presumably Apex. However, Sabit went on to insist that "[d]oing a spinal surgery on [a particular patient] did not dictate that I would make or lose money." This last statement is misleading, as even Reliance principal Brett Berry admits that "in general if you did more cases, if there was – if the company did more cases, then there would be a larger profit."

13

Reliance's and Sabit's efforts to obscure the nature of their relationship, the Government's efforts to conduct further inquiry are manifestly legitimate.

### 2. Sabit's Production of Responsive Documents Is Not "Testimonial" in Nature.

The Fifth Amendment of the Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V; *see also Chavez v. Martinez*, 538 U.S. 760, 769 (2003); *United States v. Washington*, 431 U.S. 181, 188 (1977); *United States v. Monica*, 317 U.S. 424, 427 (1943). The burden is on the person seeking to avoid production to explain why a response would pose a real danger of incrimination. *United States v. Baker*, 721 F.2d 647, 650 (8th Cir.1983); *Bear Sterns & Co., Inc. v. Wyler*, 182 F. Supp. 2d 679, 684 (N.D. Ill. 2002). A witness cannot "draw a conjurer's circle around the whole matter by his own declaration that to write any word upon the government blank would bring him into danger of the law." *United States v. Sullivan*, 274 U.S. 259, 264 (1927).

"[A] person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." *United States v. Hubbell*, 530 U.S. 27, 35-36 (2000). CID 13-338 seeks documents that already exist and are in Dr. Sabit's possession.

14

This action seeks the enforcement of three categories of document requests to which Dr. Sabit has objected:

- Communications – including emails – between Reliance and Dr. Sabit;

- medical records of patients on whom Reliance devices have been used; and

- records – including audio recordings of interviews – provided to Dr. Sabit by the Medical Board of California.

CID 13-338, Attachment C, #3. In each case, Dr. Sabit objects in general terms, asserting: "rightly or wrongly, Dr. Sabit's act of producing such documents … in these subject areas may be used by DOJ, correctly or incorrectly, in an effort to incriminate him." Sabit Response to CID 13-338. However, the mere suggestion that the requested documents "may be used" in a criminal case falls short of Dr. Sabit's burden of showing that the underlying information would incriminate him. *Baker*, 721 F.2d at 650; *Bear Sterns*, 182 F. Supp. 2d at 684.

More significantly, despite several conversations with the undersigned, Dr. Sabit has not explained how the act of producing responsive documents that are already in existence would be "testimonial" in nature. The act of producing documents in response to a subpoena may be deemed testimonial in certain limited circumstances. *See Hubbell*, 530 U.S. at 36; *see also United States v. Grable*, 98 F.3d 251, 253 (6th Cir.1996).

However, an act of production will be deemed testimonial only where it would be tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of documents fitting certain broad descriptions. *Hubbell*, 530 U.S. at 41. Thus, the courts of appeals that have considered the scope of the "act of production" doctrine after *Hubbell* have held it to apply only where the government is unable to describe the documents to be produced with "reasonable particularity." *See United States v. Ponds*, 454 F.3d 313, 320 (D.C. Cir. 2006); *In re Grand Jury Subpoena Dated April 18, 2003*, 383 F.3d 905, 910 (9th Cir. 2004); *United States v. Teeple*, 286 F.3d 1047, 1051 (8th Cir. 2002). Put otherwise, where the Government does not need the subpoena recipient's assistance to identify potential sources of information – where the recipient is not required "to make extensive use of the contents of his own mind" in order to respond to the subpoena – then the act of production doctrine does not apply. *See Ponds*, 454 F.3d at 320.

The "act of production" doctrine does not apply in this case because the Government seeks to enforce CID 13-338 only with respect to documents that it independently knows to exist and can describe with reasonable particularity. First, and most obviously, the "act of production" doctrine does not justify Dr. Sabit's efforts to withhold production of the

medical records of patients on whom he has used Reliance implants. Dr. Sabit argues both that he doesn't have any such records – that documents related to his practice in Michigan are in the possession and control of the hospitals in Michigan – and that the act of producing such documents is protected by the Fifth Amendment. Both arguments are unavailing. The CID seeks only records from Dr. Sabit's own practice, not from the hospitals where he has performed surgeries. Records in Dr. Sabit's possession likely include reports memorializing his evaluation and physician examination of patients on whom Reliance implants were subsequently used.

The act of producing the medical records at issue is not protected by the Fifth Amendment. The Government is aware of over seventy cases in which Dr. Sabit used Reliance implants on patients after he relocated to Michigan. The Government, as payor in many of Dr. Sabit's surgeries, has the right to examine the records that furnish the basis for Dr. Sabit's claims. And Dr. Sabit is required by his Medicare provider agreement to maintain such records. *See* Kuntz Decl., ¶6. Because these records already exist, and the Government can describe the records it seeks with reasonable particularity, Dr. Sabit's act of producing these records would not be "testimonial."

The "act of production" doctrine also does not justify Dr. Sabit's efforts to withhold production of his communications with Reliance. The Government is aware of emails between Dr. Sabit and Reliance's non-physician owners. By way of example, on July 9, 2010, Dr. Sabit sent an email from his personal Yahoo account to Brett Berry's personal Yahoo account requesting that Reliance purchase certain instruments from other vendors rather than modify Reliance's own instruments. *See* Kuntz Decl., Ex. L ("Sabit email"). CID 13-338 seeks *all* such communications in Dr. Sabit's possession or control. Again, because the Government has described the documents it seeks in the CID with reasonable particularity, the "act of production" doctrine does not apply. *See Teeple*, 286 F.3d at 1051.

Finally, the "act of production" doctrine does not justify Dr. Sabit's refusal to produce records provided to him by the Medical Board of California. The Government is aware that Dr. Sabit participated in a lengthy interview with representatives of the Medical Board, that this interview was tape-recorded, and that Dr. Sabit was given a copy of this recording. In this interview, Dr. Sabit speaks at length about some of the surgeries he performed at Community Memorial Hospital in California. The Government is entitled to discover evidence that is already in existence of statements that Dr. Sabit made to the Medical Board. Again, because the

Government has independent knowledge of the existence of this evidence, that "act of production" doctrine does not apply.

## CONCLUSION

The Government investigation under which the contested CID was issued is fully authorized under the False Claims Act; the materials requested by subpoena are reasonably relevant to the inquiry; and the act of producing these materials would not be testimonial in nature. Accordingly, the United States respectfully requests this Court to summarily enforce the CID.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

BARBARA L. McQUADE,
United States Attorney


 s/ Peter Caplan
PETER A. CAPLAN (P30643)
Assistant United States Attorney
211 W. Fort Street
Detroit, MI 48226
Tel: (313) 226-9784
Email:  peter.caplan@usdoj.gov

                                <u>s/with consent of David M. Finkelstein</u>
                                MICHAEL D. GRANSTON
                                TRACY L. HILMER
                                ARTHUR S. DI DIO
                                DAVID M. FINKELSTEIN
                                Attorneys, Department of Justice
                                Civil Division
                                Ben Franklin Station, P.O. Box 261
                                Washington, D.C.  20044
                                Tel:  (202) 616-2971
                                Email:  David.M.Finkelstein@usdoj.gov

Dated:  February 7, 2014