UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES,

        Plaintiff,

                                        CASE NO. 14-MC-50155
v.                                       HONORABLE GEORGE CARAM STEEH

ARIA O. SABIT,

        Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART THE GOVERNMENT'S MOTION TO ENFORCE CIVIL INVESTIGATIVE DEMAND

Now before the court is the government's motion to enforce Civil Investigative Demand ("CID") 13-338, issued by the United States Department of Justice ("DOJ") in connection with the investigation of defendant, neurosurgeon, Dr. Aria Sabit, whom the government alleges received kickbacks from Reliance Medical Systems ("Reliance") for performing unnecessary implants of spinal devices. Defendant opposes the enforcement of the CID on the basis that production of the requested documents would violate his Fifth Amendment right against self-incrimination. Oral argument was heard on April 1, 2014. For the reasons stated on the record and below, the government's motion shall be granted, in part, as to (1) medical records of patients using Reliance devices identified in a list to be provided to defendant by the government, (2) audio recordings of interviews with defendant and the Medical Board of California, and (3) a letter from Reliance to defendant terminating their relationship, and shall be denied, in part, as to its request for all e-mail communications between defendant and Reliance from 2009 to 2014.

-1-

**BACKGROUND**

Prior to 2010, Sabit practiced medicine in California.  Reliance sells spinal implants to hospitals.  In May, 2010, Sabit was one of the first two physician investors in a company by the name of Apex Medical Technologies, LLC ("Apex") which was in the business of supplying Reliance's implantable medical devices to hospitals for use on their physician-investors' patients.[1]  Reliance operated Apex.  Reliance conducted business in Ventura, California through Apex from May, 2010 until December, 2010.   After he became an investor in Apex, Sabit's use of Reliance's surgically implanted devices increased dramatically.  For example, Sabit used one type of implant, known as a PEEK cage, seven times in 2009, and after he became an Apex investor, used that same implant 49 times in 2010.  (Klutz Decl. at ¶ 12).  The government maintains that Sabit remained an Apex investor until July, 2012.  During the two years that the government alleges Sabit was an Apex investor, the government asserts that Reliance paid him approximately $30,000 a month for a total of $400,000.  Id. at ¶ 10.

In the fall of 2010, the California hospital where Sabit worked suspended him allegedly because his infection rate and return-to-surgery rate were significantly higher than those of other physicians and began an investigation of his surgeries.  Sabit then resigned and relocated to Michigan where he is currently practicing medicine and performing surgery.  Sabit contends that the California hospital reinstated him shortly after his suspension.  In September, 2013, the California Board of Medicine began proceedings to

---

[1]Apex is a physician owned distributorship ("POD"), a company that derives revenue from selling implantable medical devices to hospitals for use on their physician investors' patients.

revoke Sabit's medical license, accusing him of gross negligence, and dishonest and corrupt acts.  Id. at ¶ 13.  Those proceedings are ongoing.

## THE STATUTORY BASIS FOR THE CID

The government relies on the Anti-Kickback Statute ("AKS"), and the False Claims Act ("FCA"), in support of its CID.  The AKS makes it a felony for a person to solicit or receive a payment or any remuneration in exchange for furnishing goods for which payment may be made under a federal health program, including Medicare and Medicaid.  42 U.S.C. § 1320a-7b(b).  On March 26, 2013, the Department of Health and Human Services Office of the Inspector General ("OIG") issued a special fraud alert declaring that physician-owned distributorships such as Reliance, "are inherently suspect under the anti-kickback statute." (Kuntz Decl., Ex. M).

The FCA imposes civil liability for "knowingly presenting or causing to be presented a false or fraudulent claim for payment" involving government funds or property.  31 U.S.C. § 3729(a)(1)(A).  A claim for payment that is tainted by a violation of the AKS "constitutes a false or fraudulent claim for purposes of" the FCA.  42 U.S.C. § 1320a-7b(g).  The FCA empowers the Attorney General, or his designee, to issue a CID, which is a type of civil subpoena, to "any person" who has information "relevant to a false claims law investigation." 31 U.S.C. § 3733(a)(1).  A CID may be enforced in any judicial district in which the CID recipient resides.  31 U.S.C. § 3733(j)(1).

## THE CIVIL INVESTIGATIVE DEMAND

On August 16, 2013, the government served CID 13-338 on Sabit.  Although Sabit's counsel initially indicated that he would comply with the CID, he later invoked Sabit's Fifth

Amendment right and refused to produce any of the documents sought other than Sabit's CV.

## ANALYSIS

Sabit argues invocation of his Fifth Amendment right is proper because there is a clear threat that the government will escalate its investigation from a civil to a criminal case. The government does not contest Sabit's invocation of the Fifth Amendment as a basis for refusing to give testimony or answer interrogatories. The only issue before the court is whether Sabit's Fifth Amendment right shields him from an obligation to produce the documents requested in the CID. The Supreme Court has held that the act of production of documents may be "testimonial" where it is akin to answering interrogatories or responding to a series of questions at a discovery deposition, that is, where the witness is asked to "make extensive use of his own mind" in identifying the documents requested in the government's subpoena. United States v. Hubbell, 530 U.S. 27, 41-43 (2000).

In Hubbell, the government, pursuing its Whitewater investigation, sought documents from Webster Hubbell in a broadly worded subpoena duces tecum that sought information from 11 categories of documents, including "any and all documents reflecting, referring, or relating to any direct or indirect sources of money or other things of value received by or provided to an individual or members of his family during a 3-year period." Id. at 41. Under these circumstances, the Court found that the respondent's production of 13,120 pages of materials was "testimonial," given that the government lacked prior knowledge as to its existence or location and the document requests amounted to a fishing expedition. Id. at 41-45. The Court found that it was not enough that the government knew Hubbell

maintained business records, a more particularized showing that it knew of the documents' existence was needed.  Id. at 45.

By contrast, when a witness produces a document that the government knows exists, the act of production is tantamount to a "surrender" and is not "testimonial."  Fisher v. United States, 425 U.S. 391 (1976).  In Fisher, the Supreme Court found that taxpayers' Fifth Amendment privilege against self-incrimination was not implicated where the government used subpoenas to seek production of accountant's papers which it knew were in the hands of the taxpayers' lawyers.  Id. at 411.  The Court rejected that taxpayers' argument that production of the papers was "testimonial," finding that the "existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers." Id.  Whether the production of documents is testimonial, and thus, subject to the Fifth Amendment privilege is a fact-intensive inquiry.  Id. at 410.  The inquiry for the court is whether the government has sufficient knowledge as to the existence and location of the documents sought such that Sabit's production would amount to a mere "surrender" of records and would not be deemed "testimonial."

The parties agree that decisions of the Courts of Appeals to address the act of production doctrine since Hubbell require that, in order to enforce the CID, the government must prove that it has described the requested documents with "reasonable particularity." See In re Grand Jury Subpoena Duces Tecum Dated March 25, 2011, 670 F.3d 1335, 1346 (11th Cir. 2012) (defendant cannot be compelled to decrypt hard drives government suspects contain child pornography because decryption would be "testimonial" where government lacks specific knowledge that the hard drives contain such evidence); United

States v. Ponds, 454 F.3d 315, 316 (D.C. Cir. 2006) (defendant's production of certain documents was "testimonial" because the government did not know of the existence and location of the documents when it prepared its broadly worded subpoena); In re Grand Jury Subpoena Dated April 18, 2003, 383 F.3d 905, 910-11 (9th Cir. 2004) (production of documents deemed "testimonial" where breadth of subpoena exceeded the government's knowledge of documents witness created or possessed during his former employment and retained); United States v. Teeple, 286 F.3d 1047, 1051 (8th Cir. 2002) (production of documents not "testimonial" where government's request for specific business and tax records were a "foregone conclusion."). In other words, the government must show that it had knowledge of the documents *before* they are produced. Ponds, 454 F.3d at 320. As the Court of Appeals explained in Ponds, the "government cannot make an end-run around the Fifth Amendment by fishing for a document that will answer a question for which it could not demand an answer in oral examination." Id. at 327.

In light of the above case law regarding the act of production doctrine, the court now analyzes whether the CID should be enforced here. The document requests fall into three categories: (1) communications, including e-mails, between Sabit and Reliance, (2) medical records of patients on whom Sabit used Reliance devices, and (3) audio recordings of interviews, provided by Sabit to the Medical Board of California.

**A.**     **Communications with Reliance**

The CID sets forth a very broad request for documents concerning Reliance. It seeks, in relevant part:

> 2.     Documents concerning any PODs in which you have invested at any time, including without limitation RELIANCE.

-6-

3.    Documents concerning RELIANCE, including without limitation:

    a.    documents provided by you to RELIANCE;
    b.    documents provided to you by RELIANCE;
    c.    documents concerning payments from RELIANCE to you;
    d.    documents concerning payments from you to RELIANCE;
    e.    [d]ocuments concerning communications or meetings between you and RELIANCE, or between you and any actual or potential RELIANCE investor.

(Kluntz Decl., Ex. A at Attachment C).  In its motion to enforce the CID, however, the government only seeks documents listed in 3(e) concerning communications between Sabit and Reliance.  At oral argument, the government argued that its request was limited to a letter sent from Reliance to Sabit terminating their relationship, and e-mails between Reliance and Sabit from 2009 to 2014.  At the hearing, Sabit did not specifically object to production of the letter.  Because the government knows of the existence and location of the letter, Sabit shall be compelled to produce it.

As to the request for e-mails, Sabit contends that even this more limited request is overly broad, as it would require him to sort through all of his e-mails and also, to sort out the relationships between various individuals and Reliance.  Sabit claims the government has identified only one e-mail between himself and Reliance, and thus, the government's request is not based on "reasonable particularity" but is a fishing expedition.  The government responds that it has identified the e-mail account from which Sabit sent and received e-mails, and that it has identified one e-mail.  At oral argument, the government stated that it knows of other e-mails and could identify them to the court for *in camera* review.  At the hearing, the government also stated that it is seeking e-mails for the five-year period beginning in 2009 to the present, and guessed that the number of e-mails in existence would be less than 50.  The government provided no basis for such speculation.

-7-

The government also failed to identify the nature of the communications sought.  The government's argument is reminiscent of the argument the Supreme Court rejected in Hubbell where the government claimed production of business records was not testimonial because Hubbell, as a businessman, could be expected to maintain business records.  530 U.S. at 45.  The Court held greater particularity is required and the same is true here.

The government could likely identify an e-mail address for anyone; this does not make the production of all e-mails non-testimonial.  Sabit would be required to sift through all of his e-mails to respond to the document request which might require him to identify which individuals were affiliated with Reliance.  Such an exercise would require Sabit to use the contents of his mind, and is akin to answering written interrogatories or answering oral questions at a discovery deposition would be constitutionally protected by the Fifth Amendment.  The government has failed to identify the existence of the e-mails sought with reasonable particularity, and the request appears to be akin to a fishing expedition that was found to be testimonial in Hubbell.

**B.      Medical Records of Patients Treated with Reliance Medical Devices**

The CID also requests "Medical Records and all other documents pertaining to all patients that you have treated at any time using RELIANCE products."  (Klutz Decl., Ex. A at Attachment C).  At oral argument, the government stated that it could provide Sabit with a list of all patients receiving Reliance medical devices for whom it was seeking documents.  Because the government can identify the names of all Sabit's patients receiving Reliance medical devices, Sabit's response to this document request would not be "testimonial."  Thus, the government's motion to enforce the CID as to medical records, limited to those

-8-

patients it identifies to defendant who received Reliance medical devices, shall be granted.

### C.   <u>**Communication with the Medical Board of California**</u>

The CID document request also seeks, "[d]ocuments reflecting any communication with any state or other licensing authority concerning your practice of medicine."  In its motion to enforce the CID and at oral argument, however, the government limited its request to the audio recording(s) of defendant's interview(s) with the Board about some of the surgeries he performed at Community Memorial Hospital in California.  The government was not aware of the exact number of recorded interviews.  In his response brief, Sabit contends that he has already offered to produce those documents provided the government does not deem the production a waiver of his Fifth Amendment rights.  There is no question that the government knows of the existence of audio recordings and knows that they are in Sabit's possession.  Thus, Sabit shall be compelled to produce those recordings.

<u>**CONCLUSION**</u>

For the reasons stated on the record and above, the government's motion to enforce the CID (Doc. 1) is GRANTED, IN PART, and defendant is compelled to produce (1) medical records regarding patients who received Reliance medical devices, for those patients identified in a list to be provided by the government to defendant, (2) audio recordings of interviews between defendant and the Medical Board of California, and (3) a letter sent to defendant by Reliance terminating their relationship.  Defendant shall produce the above identified documents within 21-days after the government provides a list of the patients receiving Reliance devices to defendant. The government's motion to

enforce the CID is DENIED, IN PART, as to its demand for all e-mails between himself and Reliance from 2009 to the present.

**IT IS SO ORDERED**.

Dated:  April 1, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 1, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---

-10-